IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THE CITY OF HOUSTON, TEXAS, | § § § § | |
| Plaintiff, | | |
| v. | § § § | CASE NO. 4:13-cv-02532 |
| XEROX STATE AND LOCAL SOLUTIONS, INC., a/k/a and f/k/a ACS STATE AND LOCAL SOLUTIONS, INC., | § § § § § § | JURY DEMANDED |
| Defendant. | § | |

## FIRST AMENDED COUNTERCLAIM

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendant/Counter-Plaintiff, Xerox State & Local Solutions, Inc., in accordance with this Court's Rule 16 Scheduling Order signed October 23, 2013 [Dkt. 14], hereby files this First Amended Counterclaim complaining of the City of Houston, and would respectfully show the Court as follows:

### I.  PARTIES AND JURISDICTION

1. Xerox State & Local Solutions, Inc. ("Xerox") is a New York corporation with its principal place of business in Fairfax, Virginia.

2. The City of Houston, Texas ("City" or "Plaintiff") is a Texas home-rule municipal corporation established by and functioning under its City Charter with its place of business in Houston, Harris County, Texas.

3. This Court has jurisdiction over this counterclaim because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.

## II.     FACTS

### A.     The Ambulance Fee Collections Services Contract

4. In 2002, Plaintiff and Xerox entered into a Contract for Ambulance Fee Collections Services. This contract was amended in 2007 and, again, in 2011 (collectively, the "EMS Contract"). The 2002 EMS Contract is attached hereto as Exhibit 1; the 2007 First Amendment is attached hereto as Exhibit 2; and the 2011 Second Amendment is attached hereto as Exhibit 3. The EMS Contract as amended is incorporated herein by reference.

5. Under the EMS Contract, in general, Xerox was to provide billing and collection services for fees charged by Plaintiff to emergency medical service patients who were transported by a Houston Fire Department ambulance to a receiving hospital. (Ex. 1, at Ex. A) ("Scope of Services"). Xerox's fee was a flat contingency fee based on the gross revenue of collections for each month. (Ex. 1, at Ex. B) ("Payment of Fees").

6. The EMS Contract provides two avenues to terminate the contract. First, the City may, after a moratorium period, terminate the EMS Contract "For Convenience" by providing Xerox with 30-days written notice. (Ex. 1, at § V(D)). In the event of termination for convenience, Xerox "shall submit an invoice showing in detail the services performed under this Agreement up to the termination date." (*Id*.). Plaintiff "shall then pay the fees to Contractor [Xerox] for services actually performed, but not already paid for . . . ." (*Id*.).

7. The second avenue to terminate the EMS Contract is "for Cause." (Ex. 1, at § V(E)). "Either party may terminate its performance under this Agreement if the other party defaults and fails to cure the default after receiving notice of it." (*Id*.). A default occurs when a party fails to perform a "material" duty under the contract. (*Id*.). In the event of a default, the injured party "shall deliver a written notice to the defaulting party ***describing*** the default and the

2

proposed termination date." (*Id.*) (emphasis added). Curing a default renders the proposed termination date ineffective. (*Id.*). Without a "description" of the purported default, the injured party is without notice and there is no right to terminate for cause. (*Id.*).

### B. Plaintiff's Breach of the EMS Contract

8. In May of 2013, after accepting the benefits under the EMS Contract for more than a decade, Plaintiff sent Xerox a letter declaring "Notice of Default and Intent to Terminate the Contract for Cause." (Ex. 4). In this letter, Plaintiff lists ten, what it calls, "independent grounds" for default. By way of example, the City alleged that Xerox had not "Complied with its express warranties as to performance," had not "Timely performed its obligations," and had not "Properly calculated its fees under the Contract." (*Id.*, pp. 1-2). Plaintiff's vague bullet points, however, provided no sort of meaningful description of the alleged "material defaults"— making it impossible for Xerox to even attempt to cure them. Plaintiff then claimed Xerox had to cure these "independent grounds" within 31 days or Plaintiff would terminate the EMS Contract for cause. (*Id.*, p. 1).

9. Xerox responded by requesting a description of the alleged default. (Ex. 5). For example, Xerox responded that Plaintiff's claim that Xerox had not "Complied with its express warranties as to performance" did "not specify which express warranties the City [Plaintiff] contends ACS [Xerox] had breached and it does not reference where in the Contract ACS has made express warranties." (*Id.*, p. 1). In response to each default alleged by Plaintiff, Xerox requested a description of the default to allow Xerox an opportunity to cure. (*Id.*). Plaintiff, however, refused to provide a meaningful description of the alleged defaults and, instead, purported to terminate the EMS Contract "for cause," effective July 25, 2013. (Ex. 6). Plaintiff also declared that it would "no longer perform under the [EMS] Contract." (*Id.*).

3

10. After Plaintiff's wrongful termination of the EMS Contract, Xerox submitted an invoice showing the services performed up to the purported termination date in the amount of $2,461,988.14 (an amount that has not been disputed by Plaintiff) and placed Plaintiff on notice that it must remit all fees owed for matters previously noticed or billed for a ninety-day period following the purported termination. Plaintiff, however, refused to pay the outstanding amount due to Xerox.

11. Prior to its purported notice of default and improper termination, on May 24, 2013, Plaintiff instructed Xerox to cease sending out bills on its behalf under the EMS Contract. In as much as Xerox's fee under the EMS Contract was a percentage of collections, this instruction to cease billing caused additional damages to Xerox.

12. The day after the City sends Xerox the Cure Notice, Lynette Fons, First Assistant City Attorney in the City's legal department, sets up a call with Digitech Computer Inc. ("Digitech"): "I would appreciate it if you [Digitech's Vice President of Business Development] could call me tomorrow." Meetings between the City's legal department and Digitech to finalize the terms of another EMS contract started as early as June 3, 2013.

13. On or about July 24, 2013, before the wrongful termination of the EMS Contract, the Houston Director of Finance Department entered a request for council action seeking an ordinance approving and authorizing a professional services agreement between Plaintiff and Digitech Computer, Inc. relating to the billing of fees for emergency medical services. (Ex. 7).

**C.  City Failed to Pay Xerox the Entire Buy-Out Amount.**

14. The EMS Contract provides that the City may initiate a buy-out option of the computer hardware, software, and equipment. (Ex. 1, § H). In the event the City elects to exercise the buy-out option, the purchase must be for the entire list of equipment, depreciated according to the contract's depreciation schedule. (*Id.*).

15. The Second Amendment to the EMS Contract provides that in the event the City terminates the EMS Contract before the end of the five year term starting in 2011, the City "shall" pay Xerox "as termination costs the lesser of (1) the depreciated price for the 2011 Equipment in accordance with the depreciation schedule . . . ; or (2) the five-year straight line depreciated price of the 2011 Equipment, starting from the actual cost paid by Contractor. (Ex. 3, § V(H)).

16. At the pre-removal, temporary injunction hearing in this case before the 80th Judicial District Court, the City elected to exercise its buy-out option and tendered a check for $1,178,397.08.

17. Xerox denies that the City properly terminated the EMS Contract. However, at the City's request, (and reserving all rights regarding improper termination) Xerox transferred all title and/or possession of the 2011 Equipment to the City and complied with EMS Contract with regard to the buy-out option.

18. The amount paid by the City, however, is not the lesser of (1) the depreciated price for the 2011 Equipment in accordance with the depreciation schedule . . . ; or (2) the five-year straight line depreciated price of the 2011 Equipment, starting from the actual cost paid by Contractor. The City, therefore, owes Xerox additional funds to pay for the equipment under EMS Contract.

### III. CAUSES OF ACTION
### COUNT 1 – ACCOUNTING

19. Xerox incorporates by reference the factual allegations contained in the preceding paragraphs.

20. Xerox requests that the Court appoint an independent auditor, at Plaintiff's sole cost and expense, to investigate and make a report regarding the matters described herein, and

that the Court order Plaintiff to cooperate with this investigation and allow all access to all of the records in its possession, custody, or control and facilitate the accomplishment of such an accounting.

## COUNT 2 – BREACH OF CONTRACT

21. Xerox incorporates by reference the factual allegations contained in the preceding paragraphs.

22. The EMS Contract is a binding and enforceable contract to which Xerox is a party and under which Xerox has fulfilled all of its obligations. As set forth more fully above, Plaintiff breached the EMS Contract by, among other things, wrongfully terminating the contract for cause, failing to provide adequate notice of default, failing to provide Xerox with the required period to cure any alleged default, failing to pay contractually required fees to Xerox, failing to allow Xerox to bill for ambulance services, impeding the ability of Xerox to earns its percentage of the fees billed, and failing to fulfill the terms of the parties' buy-out agreement.

23. As a result of these breaches, Xerox has suffered damages in an amount in excess of the minimum jurisdictional limits of this Court, for which Xerox now sues.

## COUNT 3 – QUANTUM MERUIT

24. Xerox incorporates by reference the factual allegations contained in the preceding paragraphs.

25. As a result of Plaintiff's wrongful acts, Xerox asserts a right to recovery based on a promise implied by law to pay for beneficial services rendered and knowingly accepted. That is, valuable services were rendered and materials were furnished to Plaintiff, and the services and materials were accepted by Plaintiff under circumstances as reasonably notified Plaintiff that Xerox, in performing the service or providing the materials, expected to be paid by Plaintiff.

## COUNT 4 – UNJUST ENRICHMENT

26. Xerox incorporates by reference the factual allegations contained in the preceding paragraphs.

27. As a result of Plaintiff's wrongful acts, Xerox asserts a right to recovery because Plaintiff has benefited at the expense of Xerox by fraud, duress, or the taking of an undue advantage.

28. Xerox, therefore, seeks return of all amounts which Plaintiff was unjustly enriched and which, in equity, Plaintiff should make restitution.

## COUNT 5 – ATTORNEY'S FEES

29. Xerox incorporates by reference the factual allegations contained in the preceding paragraphs.

30. As a result of Plaintiff's wrongful acts, Xerox retained the undersigned law firm to represent it and agreed to pay their reasonable and necessary fees and expenses. Xerox seeks recovery of its reasonable and necessary attorney's fees, court costs, and expenses through trial and appeal under applicable law, including, but not limited to, Rule 38.001 of the Texas Civil Practice & Remedies Code, the express agreement among the parties, and as otherwise authorized by law.

## IV. MISCELLANEOUS

31. All conditions precedent to the filing of Xerox's claims in this action have been performed or have already occurred.

32. By filing these claims, Xerox does not waive or release any rights, claims, causes of action, or defenses, or make any election of remedies, but rather expressly reserves all rights, claims, causes of action, and defenses, whether or not the same have been asserted or may

hereafter be asserted in this or any other proceeding.

## V.    **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Xerox prays that:

1. The City be served with process and be required to answer this Counterclaim in the time and manner prescribed by law;

2. The Court appoint an independent auditor to conduct the audit requested herein;

3. The Court award judgment against the City and in favor of Xerox for its damages;

4. Xerox recover its reasonable and necessary attorney's fees, court costs, and expenses incurred through the trial of this cause and any appeal;

5. Xerox be awarded pre and post-judgment interest as allowed by law;

6. The City take nothing by reason of its claims;

7. All claims against Xerox be dismissed; and

8. The Court direct the entry of such other and further relief, at law or equity, both general and special, including an accounting, to which Xerox may show itself justly entitled.

Dated: February 28, 2014            Respectfully submitted,

BAKER & HOSTETLER LLP

By: /s/ *Michael W. Mengis*
    Michael W. Mengis
    State Bar No. 13941040
    B. Scott McBride
    State Bar No. 24002554
    Bradley K. Jones
    State Bar No. 24060041
    811 Main Street, Suite 1100
    Houston, Texas 77002
    Telephone: (713) 751-1600
    Facsimile: (713) 751-1717
    Email: mmengis@bakerlaw.com;
          smcbride@bakerlaw.com;
          bkjones@bakerlaw.com

**ATTORNEYS FOR DEFENDANT, XEROX STATE AND LOCAL SOLUTIONS, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that the above document has been served on all counsel of record via the Court's electronic mailing system on this 28th day of February, 2014:

Geoffrey L Harrison
Matt Behncke
Alex Kaplan
Susman Godfrey LLP
1000 Louisiana, Suite 5100
Houston, Texas 77002
Telephone: 713-653-7807
Facsimile: 713-654-6666
Email: gharrison@susmangodfrey.com;
mbehncke@susmangodfrey.com;
akaplan@susmangodfrey.com

                                          /s/ *Michael W. Mengis*
                                            Michael W. Mengis