IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| City of Houston, | § | |
| *Plaintiff,* | § | |
| v. | § | |
| Xerox State and Local Solutions, Inc., | § | Case No. 4:13-cv-02532 |
| a/k/a and f/k/a ACS State and Local | § | Jury Demanded |
| Solutions, Inc. | § | |
| *Defendant.* | § | |

## City of Houston's Second Amended Complaint

Plaintiff City of Houston (the "City") files this Second Amended Complaint against defendant Xerox State and Local Solutions, Inc., formerly known as ACS State and local Solutions, Inc. ("Xerox").

I.

## Introduction

1.      As part of its services to its residents and visitors, the City's Fire Department provides Emergency Medical Services, ambulance transportation and services, and related items and services (collectively, "EMS Services") to people who need them.  The process for billing and collecting for the EMS Services the City provides is complex, requires industry-specific expertise, the devotion of substantial resources, and the exercise of significant care and attention to ensure that the City collects as much as possible.

2.      Xerox represented to the City that Xerox had the necessary ability and expertise, and Xerox represented that it would devote the substantial resources and attention necessary to perform billing and collections on behalf of the City.  Based on Xerox's representations, the City placed its trust in Xerox and contracted with Xerox to provide EMS billing and collections services in exchange for a fee based on a percentage of the amount Xerox collected on behalf of

the City.  The City paid Xerox tens of millions of dollars under the EMS Contract.  Xerox did not satisfy its contractual and other obligations to the City.

3.     Xerox did not have the expertise it represented it had.  Xerox did not intend to devote the resources necessary to handle the City's EMS billing and collection needs in accordance with the parties' contract.  The City paid Xerox over $40 million in fees and, in exchange, Xerox breached its contractual and other obligations to the City in many ways, including by failing to comply with the EMS Contract, failing to collect as much as a reasonably diligent and contract-compliant billing and collections vendor under similar circumstances would have collected, and by failing to adhere to the prevailing professional standards with respect to the scope, quality, due diligence, and care of its EMS billing and collections services.

4.     Xerox compounded its breaches by concealing its breaches and related misconduct from the City.  Xerox refused to provide or was otherwise incapable of providing the City with fully auditable billing, collection, and accounts receivable systems that Xerox contractually was required to maintain and make available to the City.  Xerox took advantage of the lack of transparency it created.  Xerox improperly induced the City to pay Xerox millions of dollars in bonuses to which Xerox was not entitled, and Xerox did so by manipulating its purported net collection rate by improperly writing off certain accounts and by excluding those accounts from the net collection rate calculation as uncollectible.  Through this and other manipulation, Xerox falsely represented to the City that it had achieved a net collection rate that was higher than Xerox's actual collection rate and thus tricked the City into paying Xerox millions of dollars in fees to which Xerox was not entitled.

5.     Xerox's breaches, inadequate collections, and other wrongful conduct caused the City to lose tens millions of dollars, exposed and continues to expose the City to potential

liabilities to Medicare, Medicaid, private insurance companies, and individuals for overpayment of improperly billed accounts, and caused the City to pay more in fees and bonuses to Xerox than Xerox was entitled to receive for the shoddy work and services Xerox provided.

6.      On July 25, 2013, the City terminated the EMS Contract for cause.  Following the termination for cause, Xerox caused further damage to the City and hindered the City's billing and collection efforts.  Xerox converted documents and information that belonged to the City and that Xerox was required to maintain, and Xerox refused to turn these materials over to the City.  The City had to file this lawsuit and seek injunctive relief (which resulted in an agreed order entered by a Texas state court) compelling Xerox to turn these materials over to the City, although it now appears that Xerox did not maintain (and thus did not provide) the data it was expressly and contractually required to maintain.  The City now seeks to hold Xerox financially accountable for the substantial harm Xerox caused the City and its residents.

## II.

## Parties

7.      The City is a Texas home rule municipal corporation, established by and functioning under its City Charter with its place of business in Houston, Harris County, Texas.

8.      Xerox is a foreign, for-profit corporation incorporated in the State of New York, headquartered in Fairfax, Virginia, doing business in Harris County, Texas, and with an office in Dallas, Texas.  Xerox has appeared and may be served through its counsel of record.

## III.

## Jurisdiction and Venue

9.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332.  There is complete diversity because the City is a citizen of the State of Texas for purposes of diversity

jurisdiction. Xerox is a citizen of the State of New York and the Commonwealth of Virginia for purposes of diversity jurisdiction. The amount in controversy exceeds $75,000.

10.     This Court has personal jurisdiction over Xerox because this action arose from, and is connected with, Xerox's purposeful acts committed in Texas. Xerox has continuous and systematic activities in the State of Texas and maintains an office in Dallas, Texas. Xerox directly and intentionally transacted business in this district with respect to the matters at issue in this lawsuit. A substantial part of the events giving rise to and at issue in this lawsuit occurred in this district. Xerox also agreed in Section VII ¶ F of its contract with the City that the contract "is subject to the laws of Texas," and that "venue for any litigation relating to this Agreement is Harris County, Texas." (The citations to the EMS Contract in this complaint are to the 2002 original EMS Contract unless otherwise stated.)

11.     Venue in this Court is proper under 28 U.S.C. § 1441(a) because the 189th Judicial District Court of Harris County, Texas is located within this Division of the Southern District of Texas.

IV.

Facts

12.     The City provides EMS Services through the Houston Fire Department for residents and visitors in its jurisdiction who are in need. Private and governmental health insurance programs, other third parties, and the people who receive such services are billed for the approximately 120,000 EMS transports the City provides annually. The data collection, documentation, coding, billing, and collection process and standards for EMS Services are complex and require specialized expertise.

<u>Xerox Held Itself Out as an Expert</u>

13.     Xerox held itself out to the City and to the public as an expert in EMS billing and collection services.  Xerox represented to the City that it had the necessary expertise to properly perform EMS billing and collection services for the City, and to do so accurately, professionally, and in compliance with applicable law and standards.   In 2002, 2007, and 2011, Xerox represented to the City that it had the necessary expertise to handle the City's EMS billing and collections, and that it was able to and would in fact devote the substantial resources necessary to handle the City's EMS billing and collections.  The City informed Xerox, and Xerox confirmed it was aware, that EMS billing and collections was (and still is) an important source of revenue to the City.

14.     Xerox represented that "In 2011, we processed 500,000 emergency transports and accurately applied and accounted for more that [sic] $80 million in EMS payments."  Xerox represented that emergency medical services personnel should focus on helping people in need, not on filing paperwork and thus, Xerox claimed, the City and other municipalities should retain Xerox because it represented that it provided tools to help workers compile data, software to handle billing and collections, and "Detailed knowledge of constantly changing Medicare and Medicaid requirements, regulations and reimbursement rules."   Xerox represented that "By making administration simple, EMS billing services free EMS professionals to focus on what they do best: saving lives."   Xerox's representations were intended to, and did, deceive actual and potential customers like the City to develop a sense of trust, confidence, and security in Xerox's EMS Billing Processes – all, as it turns, unwarranted.  Xerox's representations confirm that Xerox claims to know the challenges that the City and other municipalities face, why they

need competent outside help with such processes, and what can happen when contractors (like Xerox) turn out to be incompetent or worse.

15. Xerox misrepresented and continues to misrepresent the quality and extent of the services it provided to its customers. In 2012, Xerox made public statements about its healthcare expertise, and represented:

> By applying our deep healthcare expertise and heritage of innovation expertise across virtually every member of the healthcare ecosystem–providers and payers, employers and government agencies, we help you focus on what matters–the real business of improving people's lives through better, more accessible and more affordable healthcare–which leads to better health and wellness. That's what we mean by the freedom to care.

In 2012, Xerox represented: "Better care, better bottom line. We improve accuracy in billing third-party payers, including Medicaid and Medicare, and decrease the amount of unpaid debt from ambulance transport fees." Contrary to Xerox's representations, Xerox failed to demonstrate or deliver its represented "expertise" in providing the City with EMS billing and collection services.

16. The City reasonably relied on and reposed trust and confidence in Xerox, and continued to do so for years. During the course of the City's and Xerox's relationship, Xerox multiple times repeated to the City these and other material false representations about Xerox's supposed expertise in EMS Billing Processes to the City, and did so for the purpose of inducing the City to continue rather than terminate the parties' relationship.

17. Based on Xerox's misrepresentations, the City appointed Xerox as its agent to perform EMS Billing Processes and to represent the City's interests with health insurance programs, government agencies, auditors and people who received EMS Services, and the City renewed its contractual relationship with Xerox over the years on the basis of Xerox's representations about the quality of services, the depth of its resources, and the strength of its

commitment to do its job right.  Unfortunately, Xerox exploited and took advantage of the City's trust and comparative lack of knowledge and experience about EMS Billing Processes.  When the City questioned the accuracy, correctness, or propriety of Xerox's EMS Billing Processes, Xerox repeatedly reassured and told the City that Xerox knew what it was doing and the City did not, and that Xerox was doing everything properly.

## The EMS Contract

18.     Based on Xerox's representations, the City entered into (and maintained) a contract with Xerox to perform EMS billing and collections on the City's behalf.  On October 31, 2002, the City and Xerox entered into a "Contract for EMS Ambulance Fee Collection Services."  (A copy of this document is found at Dkt. 1-3 at 45.  The City incorporates in this second amended complaint the exhibits attached to the City's prior-filed complaints.)  On November 2, 2007, the City and Xerox entered into the First Amendment to the Contract for EMS Ambulance Collection Services.  (A copy of the 2007 Amendment is found at Dkt. 1-2 at 99.)  On August 11, 2011, the parties entered into a Second Amendment to a Contract for EMS Ambulance Fee Collection Services.  (A copy of this document is found at Dkt. 1-7 at 15.)  The 2002 contract and the 2007 and 2011 amendments collectively are the "EMS Contract."

19.     The EMS Contract imposed numerous specific obligations on Xerox.  In the EMS Contract, Xerox made certain representations and warranties and agreed to certain performance requirements.  These were critical to the City for several reasons, including that the City relied on Xerox's commitments to take all necessary steps to bill and collect for all of the EMS Services the City provided, rather than just those accounts for which Xerox easily could collect fees with minimal effort and processing.

20.     Among many other requirements, the EMS Contract required Xerox to provide the labor, material, and supervision necessary to provide EMS billing and collection services for the City.  Section § III ¶ H of the EMS Contract specified that Xerox's "performance shall conform to the professional standards prevailing in Harris County, Texas with respect to the scope, quality, due diligence, and care of the services and products [Xerox] provides under" the EMS Contract.  The EMS Contract also specified certain billing and collection steps and procedures Xerox was required to follow, data Xerox was required to collect and maintain for the City, and performance standards Xerox was required to meet.

21.     The EMS Contract required Xerox to take various steps to obtain missing or incomplete patient, insurance, or transport information.  Among other things, Xerox was required to: (a) contact the hospitals to which patients were transported to obtain updated insurance and/or billing information within ten days of the transport (for accounts missing Medicare, Medicare, or insurance information), and within 120 days after the transport date for any accounts that remained unpaid, (b) research Accruint databases or other mutually agreed upon databases to locate and verify patient name and address information, (c) utilize the ACS national Collection Center to research and initiate normal debt collection processes, (d) Perform regularly scheduled "sweeps" and special collections to follow-up on accounts that had already received at least nine mail notices or that exceeded one year in age from the transport date, and (e) Pursue Medicare, Medicaid, private insurers, and third party billing companies aggressively by exhausting all appeals, re-billing accounts, and initiating suits through the City's legal department.

22.     With respect to reporting, the Section I ¶ A.4 of Exhibit A to the EMS Contract required to Xerox to maintain a database (which the City owned) consisting of "a perpetual record of all Transports by account number" and a daily sequential transport number that could

"be used to track billing and collection information on each transport." Section I ¶ A.6 of Exhibit A to the EMS Contract required Xerox to "establish fully auditable billing, collection and accounts receivable systems in accordance with generally accepted accounting principles which shall be accessible to the City or its designated agents at all times."

23. Section ¶ E of Exhibit A to the EMS Contract required Xerox to make available to the City on a monthly basis (or as requested by the City) reports related to (1) transport records, (2) billing activity, (3) unbilled accounts, (4) the reconciliation of amounts billed, payments received, daily deposits, and Xerox's monthly invoice of fees for its services, (5) payments received and depositions of each payment by date of transport, (6) a report of aged accounts receivable listed by source of payment, (7) Medicare and Medicaid billing and payment activity, (8) the reconciliation all payment activities, (9) refunds of payments for transport fees, (10) returned checks, (11) uncollectible accounts, (12) bank deposit amounts and bank adjustment to deposit amounts, (13) transports for which the EMS technician did not identify a patient name or address, and (14) all billing and collection data for Medicaid or Medicare accounts that are subsequently disputed by Medicaid or Medicare auditors as overpayments.

24. The EMS Contract provided that Xerox would receive a fee for its services calculated as a percentage of the amounts collected for the City's EMS Services. Xerox's fee under the original contract and the 2007 amendment was 14% of gross collections and 11.96% under the 2011 amendment. Xerox itself generated the information on which its fees were based.

25. The 2002 contract and 2007 amendment (but not the 2011 amendment) also provided for Xerox to receive a bonus if its net collection rate exceeded 40%. Xerox's 14% fee increased by an additional 0.5% of overall collections for each percentage point above the 40% collections rate until 50%, at which point Xerox's fee was capped at 20%. (Section I ¶ B of

Exhibit B of the EMS Contract contains a chart identifying Xerox's fee percentage). Section I ¶ B of Exhibit B of the EMS Contract explains that, for example, "if the Net Collection Rate for a particular fiscal year were 42%, the flat contingency fee for that fiscal year would be fifteen percent. Since the Contractor has already been paid a flat contingency fee of fourteen percent for all gross revenues, the Contractor would be paid an additional one percent on all collections within that fiscal year."

26.     Section I ¶ A of Exhibit B of the EMS Contract defined the Net Collection Rate as the "dollar amount of Gross Revenue Less Adjustments for Insufficient Checks and Refunds Divided by the dollar amount of gross billings less the unallowable portion for Medicare and Medicaid accounts and Unbillable Accounts as defined in Exhibit A D.2." Section II ¶ D.2.a of Exhibit A of the EMS Contract contains certain specific requirements that must be met before an account can be written-off and excluded from Xerox's calculation of the net collection rate. Xerox did not comply with these specific requirements and, instead, consistently wrote off and excluded from the calculation of its net collection rate accounts that did not meet the contractually-required criteria. As a result of Xerox's improper accounting, recordkeeping, calculations, and other wrongful conduct and manipulations, the City overpaid Xerox millions of dollars in bonuses based on Xerox's calculation of the net collection rate. The City paid Xerox more than $40 million dollars in fees, including fees based on the net collection rate.

## Xerox Breached the EMS Contract

27.     Xerox systematically breached its obligations to the City under the EMS Contract in several independent ways. Xerox's breaches run the gamut in terms of Xerox's obligations under the EMS Contract. The most fundamental of Xerox's breaches, and the breaches that caused the most economic damage to the City and its taxpayers, were Xerox's systematic failure

to follow the contractually-required scope of work and Xerox's failure to perform its obligations in accordance with prevailing industry practices – the result of which was Xerox's failing to collect tens of millions of dollars that a reasonably diligent and contract-compliant billing and collections vendor would have collected under similar circumstances.  Xerox also breached the EMS Contract by:

    a.  Failing to perform in accordance with prevailing industry practices, including without limitation systematically inadequate collections on the City's behalf,

    b.  Failing to furnish all services, materials, equipment, office space, and personnel necessary to perform billing and collections for the City,

    c.  Failing to dedicate adequate supervision, systems, services, and properly qualified personnel required to deliver the services required by the EMS Contract,

    d.  Failing to establish appropriate quality controls to ensure that the initial bills Xerox generated were accurate and therefore likely to result in payment,

    e.  Failing to establish and maintain the 100% transparent and fully auditable billing and collection reports required by the EMS Contract,

    f.  Improperly writing off accounts as uncollectible without establishing that the written-off accounts met the EMS Contract requirements and without obtaining approval from the City,

    g.  Manipulating its net collection rate under the EMS Contract, thereby wrongly increasing the compensation it received from the City,

    h.  Failing to collect from Medicare, Medicaid, and private insurers, the then-current reimbursement rates,

    i.  Failing to diligently follow up on unpaid accounts,

    j.  Failing to establish and maintain relationships with local hospitals to obtain complete patient and insurance information,

    k.  Failing to perform the required skip tracing and utilize the databases available to verify patient and insurance information,

    l.  Failing to challenge underpayments,

    m.  Failing to pursue Medicare and Medicaid appeals,

n.  Incorrectly and without authority (or notice to the City) conceding on behalf of the City that payors were entitled to refunds,

o.  Failing to maintain a program of education and training for employees,

p.  Failing to provide policies to ensure that submissions for reimbursement from public payors were accurate and compliant with applicable standards,

q.  Failing to provide the City with the reports required by the EMS Contract,

r.  Failing to ensure that billing and collection services complied with all applicable state and federal laws, regulations, legal requirements, business practices and codes of conduct applicable to the activities under the EMS Contract, a third-party billing company and otherwise,

s.  Failing to properly calculate its fees under the EMS Contract,

t.  Failing to provide the City reliable access to Xerox's billing and collection data, the master transport database, and the data warehouse required by the EMS Contract, including, but not limited to (i) the user-friendly, continuous, open web-based access to the billing and collections data down to the individual claim, transaction, and clinical data elements, (ii) the replicated database, or the multitude of reporting options to users that support the ability to drill down into the layers of account details, including a report toolkit, (iii) the replicated database of raw information – both clinical and financial – for the City's internal analytics to deliver complete data transparency, (iv) online access to the data store for internal analysis and reporting, (v) rapid reporting via data cubing and expedited searching capabilities in  software, (vi) ad-hoc reporting capability, and (vii) a web-based reporting tool to generate ad-hoc reports at any time, without the need to code or structure database queries,

u.  Failing to provide a mechanism to ensure that Xerox's rules, regulations and policies are revised to comply with applicable regulatory and legal changes.

v.  This is not an exhaustive list of the ways in which Xerox breached the EMS Contract, although it illustrates the breadth of Xerox's many breaches.

28.     Xerox breached the EMS Contract because its EMS billing and collections services were inadequate, did not yield sufficient collections, and did not conform to the prevailing professional standards with respect to their scope, quality, due diligence, and care.  Xerox failed to provide necessary and appropriate staffing to perform the billing and collection services for the City as required by the EMS Contract.  These and other failures by Xerox caused the City to lose

tens of millions of dollars that Xerox could and should have collected if Xerox had complied with its obligations under the EMS Contract.

29.     Xerox manipulated data and accounts under the EMS Contracts to increase its compensation and reduce the amounts actually collected by the City.  Xerox also concealed its breaches and other wrongful conduct from the City by failing to comply with Xerox's obligations under the Section I ¶ A.6 of Exhibit A of the EMS Contract to establish the "fully auditable billing, collection and accounts receivable systems in accordance with generally accepted accounting principles" that Xerox was required to maintain and make available to the City.

30.     In an effort to work with Xerox and improve the billing and collections process, the City multiple times requested from Xerox the data and reports that Xerox contractually was required to maintain and provide to the City.  Xerox delayed or ignored the City's requests, provided inadequate or insufficient data and reports, and otherwise refused to provide the City with the requested information.

31.     Xerox took advantage of the lack of transparency it created to extract additional substantial fees from the City.  By failing to provide the City with fully auditable reports and data necessary for the City to conduct meaningful review of Xerox's performance of the EMS Contract, Xerox artificially and improperly inflated its net collection rate.  Xerox inflated its net collection rate, for example, by improperly writing off accounts that did not meet the EMS Contract's write-off standards and that were not otherwise approved by the City.  Based on Xerox's misrepresentations, the City paid Xerox over $3 million in net collection rate bonuses to which Xerox was not entitled.

32.     The City is still discovering new ways in which Xerox breached the EMS Contract, still discovering the extent of Xerox's breaches, and still discovering the high multi-million dollar damages that Xerox's breaches and misconduct have caused the City to suffer.

<u>The City Terminated the EMS Contract for Cause</u>

33.     On May 30, 2013, the City provided written notice of default to Xerox and notice of its intent to terminate the EMS Contract if Xerox did not cure its default, and wrote:

> The City hereby gives ACS State and Local Solutions, Inc., n/k/a Xerox State and Local Solutions, Inc. ('the Contractor') notice of the Contractor's default under the [EMS] Contract and affords Contractor the opportunity to cure the acts and omissions upon which this notice is based within 31 days of the date of this correspondence. . . .
> The Contractor has not:
>
> 1. Complied with its express warranties as to performance.
>
> 2. Dedicated adequate systems and services, and properly qualified personnel, necessary to deliver the services covered by the Agreement.
>
> 3. Maintained a program of education and training as required by the Contract.
>
> 4. Ensured that submissions for reimbursement were accurate and complaint with applicable standards.
>
> 5. Complied with all applicable state and federal law, regulations, legal requirements, business practices and codes of conduct applicable to the activities under the Contract, a third-party billing company and otherwise.
>
> 6. Timely performed its obligations.
>
> 7. Properly calculated its fees under the Contract.
>
> 8. Provided the reports required by the Contract.
>
> 9. Provided the data platform and access required by the Contract . . .
>
> 10. Provided a mechanism to ensure that internal rules, regulations and policies are revised to comply with applicable regulatory and legal changes.

Dkt. 1-2 at 182.

34.     In its May 30, 2013 letter, the City also requested that Xerox provide certain specific categories of information to the City – information Xerox was obligated under the EMS Contract to maintain for the City:

> The Contract obligates the Contractor to provide certain information to the City, which now demands that the Contractor furnish the following, within 7 days of the date hereof:
>
> 1. A copy of the Contractor's Professional Liability Policy, Declarations and Certificates designating the City as an Additional Insured, from the inception of the Contract to the present.  Also, please provide a letter confirming that the Certificates accurately reflect the insurance coverage maintained.
>
> 2. A copy of the Transport master database file, as described in the Contract, along with the means to access the data it contains.
>
> 3. Copies of the contents of the fully auditable billing, collections, and accounts receivable systems that the Contractor is required to maintain and to provide, along with the provision of full access to them, as set forth in the Contract.
>
> 4. All records of inquiries and complaints, as described in the Contract.
>
> 5. All of the reports that the Contractor is obligated to provide either as a matter of course or upon the Director's request, as set forth in the Contract.  The reports should be monthly for each month the Contract has been in effect, along with annual reports for each contract year.
>
> 6. Copies of all "Change Logs" relating to claims submitted on behalf of the City.
>
> 7. A complete reconciliation of all present or past credit balances owned [*sic*] to any third party.
>
> 8. Copies of all of the claims audits conducted by Contractor.

Dkt. 1-2 at 183.

34.     On June 6, 2013, Xerox rejected the City's notice, ignored the City's request for the City's own information and data, and demanded payment under the EMS Contract for

Xerox's insufficient services.  Dkt. 1-2 at 189.  Xerox wrongly claimed the City's letter was deficient because it was "vague and ambiguous at best" and because "(1) it does not provide *any* information regarding ACS's purported default; (2) it does not state the specific conduct that the City contends constitutes a default; and (3) it does not reference the Contract provision that the City believes ACS breached."   Xerox purports to be the world's largest "expert" in EMS Billing Processes and Xerox had detailed information about its own failure of performance – information Xerox withheld from the City despite the City's demands.

36.     The City provided additional notice and time for Xerox to cure Xerox's deficiencies and delinquencies.  On June 28, 2013, the City extended the time for Xerox to cure its default.  Dkt. 1-2 at 193.  On July 18, 2013, the City reiterated its demand for the information and data Xerox was required to provide to the City, which Xerox did not provide in response to the City's May 30, 2013 letter.  Dkt. 1-2 at 195.  Xerox did not cure its default, and Xerox did not provide the requested information or data.

36.     On July 25, 2013, the City gave Xerox notice of termination of the EMS Contract. Dkt. 1-2 at 198.  Following termination, Xerox continued to breach certain of its surviving obligations under the EMS Contract.  Among other breaches, Xerox withheld and refused to turn over to the City (and Xerox otherwise prevented the City from obtaining access to) electronic patient care records (ePCRs) maintained through Xerox's EMTablet system, and Xerox failed to comply with its obligations with respect to data, equipment, software and software licenses, and warranties that the City was entitled to purchase from Xerox upon termination of the EMS Contract.

37.     The EMS Contract provides that Xerox "agrees to and shall defend, indemnify, and hold the City, its agents, employees, officers, and legal representatives . . . harmless for all

claims, causes of action, liabilities, fines, and expenses (including, without limitation attorney's fees, court costs, and all other defense costs and interest) for injury, death, damage, or loss to persons or property sustained in connection with or incident to performance under this agreement." The City has been made subject to potential claims, causes of action, liabilities, fines, and/or expenses and may continue to incur substantial expenses in connection with Xerox's performance, and lack thereof, under the EMS Contract.

38.     On July 25, 2013, the City wrote and informed Xerox, "You are reminded of your continuing obligations to the City and of the fact that you are in possession of legally protected documents and information, all of which should be promptly transferred to the City's possession." Dkt. 1-2 at 198.

39.     As a direct result of Xerox's breaches, malfeasance, and wrongful conduct, the City engaged outside counsel and other professionals to address the situation Xerox created. The City has devoted considerable internal and external resources to trying to get Xerox to comply with its contractual and other obligations, trying to get Xerox to perform its contracted-for services properly, trying to get Xerox to perform its services in compliance with professional standards, trying to get Xerox properly to calculate the proper amount if any of fees under the EMS Contract, trying to get Xerox properly to provide and administer the EMS Billing Processes, trying to get Xerox to make accurate rather than false representations, trying to get Xerox to be transparent about rather than conceal the nature of its performance and the truth or falsity of its representations, and trying to get Xerox to comply with rather than breach its obligations under the EMS Contract. As a direct result of Xerox's breaches, malfeasance, and wrongful conduct, the City secured substitute services from a different service provider and has incurred substantial internal and external costs, expenses, fees, and other charges.

V.

Causes of Action

40.     All conditions precedent for which the City might have any burden have occurred or have been waived or excused, or Xerox is estopped from relying on their non-occurrence. The acts and omissions of Xerox include the acts and omissions of Xerox's employees, authorized representatives, persons with actual authority, persons with apparent authority, agents, attorneys, and may include others as well. In the unlikely event the City is found to owe any amounts to Xerox, the City claims a right of offset against any such amount for the amounts awarded to the City in this action. The City is not now electing remedies and reserves its right to do so at an appropriate time.

Count 1 – Breach of Contract

41.     The City incorporates the allegations above.

42.     The EMS Contract is valid and enforceable. The City performed its duties and obligations under the EMS Contract, or was excused from performing one or more of them due to Xerox's prior material breach or otherwise.

43.     Xerox materially breached the EMS Contract in the following ways:

a. Failing to perform in accordance with prevailing industry practices, including without limitation systematically inadequate collections on the City's behalf,

b. Failing to furnish all services, materials, equipment, office space, and personnel necessary to perform billing and collections for the City,

c. Failing to dedicate adequate supervision, systems, services, and properly qualified personnel required to deliver the services required by the EMS Contract,

d. Failing to establish appropriate quality controls to ensure that the initial bills Xerox generated were accurate and therefore likely to result in payment,

e. Failing to establish and maintain the 100% transparent and fully auditable billing and collection reports required by the EMS Contract,

f. Improperly writing off accounts as uncollectible without establishing that the written-off accounts met the EMS Contract requirements and without obtaining approval from the City,

g. Manipulating its net collection rate under the EMS Contract, thereby wrongly increasing the compensation it received from the City,

h. Failing to collect from Medicare, Medicaid, and private insurers, the then-current reimbursement rates,

i. Failing to diligently follow up on unpaid accounts,

j. Failing to establish and maintain relationships with local hospitals to obtain complete patient and insurance information,

k. Failing to perform the required skip tracing and utilize the databases available to verify patient and insurance information,

l. Failing to challenge underpayments,

m. Failing to pursue Medicare and Medicaid appeals,

n. Incorrectly and without authority (or notice to the City) conceding on behalf of the City that payors were entitled to refunds,

o. Failing to maintain a program of education and training for employees,

p. Failing to provide policies to ensure that submissions for reimbursement from public payors were accurate and compliant with applicable standards,

q. Failing to provide the City with the reports required by the EMS Contract,

r. Failing to ensure that billing and collection services complied with all applicable state and federal laws, regulations, legal requirements, business practices and codes of conduct applicable to the activities under the EMS Contract, a third-party billing company and otherwise,

s. Failing to properly calculate its fees under the EMS Contract,

t. Failing to provide the City reliable access to Xerox's billing and collection data; the master transport database, and the data warehouse required by the EMS Contract, including, but not limited to (i) the user-friendly, continuous, open web-based access to the billing and collections data down to the individual claim,

transaction, and clinical data elements, (ii) the replicated database, or the multitude of reporting options to users that support the ability to drill down into the layers of account details, including a report toolkit, (iii) the replicated database of raw information – both clinical and financial – for the City's internal analytics to deliver complete data transparency, (iv) online access to the data store for internal analysis and reporting, (v) rapid reporting via data cubing and expedited searching capabilities in  software, (vi) ad-hoc reporting capability, and (vii) a web-based reporting tool to generate ad-hoc reports at any time, without the need to code or structure database queries.

u.  Failing to provide a mechanism to ensure that internal rules, regulations and policies are revised to comply with applicable regulatory and legal changes.

v.  This is not an exhaustive list of the ways in which Xerox breached the EMS Contract, although it illustrates the breadth of Xerox's many breaches.

44.    The City gave Xerox notice of Xerox's breaches, notice of the City's intent to terminate the EMS Contract, an opportunity to cure and an extension of the cure period.  Xerox failed and refused to cure its breaches.

45.    As a proximate and direct result of Xerox's breaches, the City suffered (and will continue to suffer) substantial actual damages including but not limited to out of pocket costs, lost revenue, lost profits, loss of the benefit of the parties' bargain, and other actual damages, costs associated with securing and utilizing replacement services, costs associated with fees and penalties due to Xerox's breaches of the EMS Contract and other wrongful conduct, attorney's fees, costs, and expenses, and other damages.  The City has retained counsel and is entitled to recover its reasonable attorney's fees and expenses under TCPRC § 38.001(8) and Chapter 38.

<u>Count 2 – Fraud and Fraud in the Inducement</u>

46.     The City incorporates the allegations above.

47.     Xerox made several false material written and oral representations and omissions to the City, including about Xerox's abilities and expertise with respect to EMS data collection, documentation, coding and billing, and EMS Billing Processes.

48.     In 2002, 2007, and 2011, Xerox represented to the City that it had the necessary ability and expertise, and Xerox represented that it would devote the substantial resources necessary to perform billing and collections on behalf of the City, that Xerox would comply with its contractual obligations.  Xerox continued to make these and similar representations to the City throughout the parties' relationship.

49.     Xerox and its personnel knew or should have known that its representations were false or they were reckless with respect to their knowledge of the truth and were made as a positive assertion, and Xerox knew or should have known at the time of the 2002, 2007, and 2011 contract executions/renewals/amendments that Xerox did not intend to perform as required, given Xerox's contract-breaching behavior of manipulating collections rates, withholding data, and systematically failing to provide the services required under the EMS Contracts.  Yet Xerox never disclosed its true intentions to the City, made the misrepresentations detailed above among others, and induced the City to execute contracts and pay Xerox millions of dollars in compensation.

50.     Xerox made its material representations with the intent that the City rely on them. The City reasonably relied on Xerox's misrepresentations and omissions to its detriment.  The City relied to its detriment on Xerox's misrepresentations and omissions.

51.     As a proximate and direct result of Xerox's representations and omissions, the City suffered (and will continue to suffer) substantial actual damages including but not limited to out of pocket costs, lost revenue, lost profits, and other actual damages, costs associated with securing and utilizing replacement services, costs associated with fees and penalties due to Xerox's wrongful conduct.  The City seeks and is entitled to actual damages and equitable remedies.  The City seeks and is entitled to actual damages, exemplary damages, and equitable remedies.

Count 3 – Fraud by Nondisclosure and Concealment

52.     The City incorporates the allegations above.

53.     Xerox had a duty to exercise reasonable care to disclose facts to the City which Xerox knew or had reason to know would justifiably induce the City to retain Xerox to provide EMS billing and collection services and continue to retain Xerox to provide EMS billing and collection services.   This duty arose because the undisclosed facts made Xerox's prior representations untrue and misleading, Xerox made an incomplete disclosure of financial information to the City, and Xerox owed the City fiduciary duties.  Xerox deliberately concealed from or failed to disclose to the City certain material facts, including information about Xerox's abilities and expertise with respect to EMS data collection, documentation, coding and billing, and EMS Billing Processes.  Xerox knew that the City did not know these facts and the City did not have an equal opportunity to discover the facts through reasonable diligence, which the City exercised.  Xerox concealed or failed to disclose those facts with the intent that the City take some action or refrain from acting.  The City reasonably relied on Xerox's nondisclosure to the City's detriment.

54.     As a proximate and direct result of Xerox's nondisclosure, the City suffered (and will continue to suffer) substantial actual damages including but not limited to out of pocket costs, lost revenue, lost profits, and other actual damages, costs associated with securing and utilizing replacement services, costs associated with fees and penalties due to Xerox's wrongful conduct.  The City seeks and is entitled to actual damages, exemplary damages, and equitable remedies.

Count 4 – Breach of Warranty

55.     The City incorporates the allegations above.

56.     In the EMS Contract and in written and oral communications, Xerox made representations and warranties to the City regarding (a) its qualifications and capabilities to render the services it was required to perform under the EMS Contract, and (b) the quality of such services.  In 2002, 2007, and 2011, Xerox expressly warranted that its performance would conform to the prevailing professional standards with respect to the scope, quality, due diligence, and care of the services and products Xerox provided.  Based on these representations, the City purchased EMS billing and collection services from Xerox.   The City relied on the representations Xerox made to the City, and those representations formed the basis of the bargain between the parties.

57.     Xerox breached its representations, warranties and covenants.  The quality of the services Xerox provided did not conform to the prevailing professional standards.  On May 30, 2013, the City gave Xerox notice of breach of warranty.

58.     As a proximate and direct result of Xerox's breach of its warranty, the City suffered (and will continue to suffer) substantial actual damages including but not limited to out of pocket costs, lost revenue, lost profits, and other actual damages, costs associated with

securing and utilizing replacement services, costs associated with fees and penalties due to Xerox's wrongful conduct. The City seeks and is entitled to actual damages, its reasonable and necessary attorneys' fees, and equitable remedies. The City has retained counsel and is entitled to recover its reasonable attorney's fees and expenses under TCPRC § 38.001(8) and Chapter 38.

## Count 5 – Conversion

59.     The City incorporates the allegations above.

60.     The City owns or otherwise has the right of immediate possession of the specific property wrongfully withheld by Xerox and the confidential billing and collection data and information Xerox refused to provide to the City.

61.     Xerox wrongfully, willfully, and without authorization assumed dominion and control over property belonging to the City to the exclusion of and inconsistent with the rights of the City.

62.     On May 30, 2013 and July 18, 2013, the City demanded the return of the City's property held by Xerox.

63.     Xerox failed to return the property until after the City filed this action and demanded an injunction or temporary restraining order. Xerox still has not provided all of the data it was required to maintain and make available to the City.

64.     As a result of Xerox's actions, the City was not able to timely process claims for billing and has lost substantial revenue to which it is entitled and would have recovered but for Xerox's intentional actions. The City seeks and is entitled to actual damages and equitable remedies. Because Xerox's conduct was intentional, wanton and malicious in nature, the City seeks and is entitled to exemplary damages.

<u>Count 6 – Breach of Fiduciary Duty</u>

65.     The City incorporates the allegations above.

66.     Xerox owed a fiduciary duty to the City because the City appointed Xerox as its agent to act on behalf of the City in billing and collecting a significant revenue stream for the City and because the City placed special trust and confidence in Xerox to act for the City's benefit in providing EMS billing and collection services.  The City placed special trust and confidence in Xerox to ensure that the actions Xerox took on behalf of the City complied with all applicable rules, regulations and policies, regulations, and laws for EMS billing and collection services.  The EMS services that the City provides are crucial to its residents and visitors and the revenue the City realizes from the billing and collections services allow the City to continue to offer those services.  The EMS Contract required Xerox to act in the City's interest in collecting this crucial revenue stream.  Xerox had a duty to act in the City's best interests and with complete candor and fairness.

67.     Xerox breached this duty by failing to act in the City's interest.  Xerox failed to perform its EMS billing and collection services according to the prevailing industry standard and failed to ensure that the billing processes it enacted on behalf of the City complied with the all applicable rules, regulations and policies, regulations, and laws for EMS billing and collection services.  Xerox' breaches of its fiduciary duties to the City caused the City significant injury and benefitted Xerox.

68.     As a proximate and direct result of Xerox's breaches of its fiduciary duties, the City suffered (and will continue to suffer) substantial actual damages including but not limited to out of pocket costs, lost revenue, lost profits, and other actual damages, costs associated with

securing and utilizing replacement services, costs associated with fees and penalties due to Xerox's wrongful conduct.

69. The City seeks and is entitled to actual damages and equitable remedies, including, but not limited to, disgorgement of profits, and disgorgement of any other monies or other things of value Xerox was paid, received, or enjoyed. Because Xerox's conduct was intentional, the City seeks and is entitled to exemplary damages.

<u>Count 7 – Constructive Fraud</u>

70. The City incorporates the allegations above.

71. Xerox owed a fiduciary duty to the City. Accordingly, Xerox's misrepresentation, omissions, and concealment of information amounted to constructive fraud, which does not require the City to demonstrate that Xerox possessed any intent to defraud.

72. Xerox willfully breached the fiduciary duties it owed to the City by failing to act in the City's interest. Xerox failed to perform its EMS billing and collection services according to the prevailing industry standard and failed to ensure that the billing processes it enacted on behalf of the City complied with the all applicable rules, regulations and policies, regulations, and laws for EMS billing and collection services. Xerox' breaches of its fiduciary duties to the City caused the City significant injury and benefitted Xerox.

73. As a proximate and direct result of Xerox's breaches of its fiduciary duties, the City suffered (and will continue to suffer) substantial actual damages including but not limited to out of pocket costs, lost revenue, lost profits, and other actual damages, costs associated with securing and utilizing replacement services, costs associated with fees and penalties due to Xerox's wrongful conduct. The City seeks and is entitled to actual damages and equitable

remedies. Because Xerox's conduct was intentional, the City seeks and is entitled to exemplary damages.

## Count 8 – Unjust Enrichment

74.     The City incorporates the allegations above.

75.     Xerox 2002, 2007, and 2011, Xerox represented to the City that it had the necessary ability and expertise, and Xerox represented that it would devote the substantial resources necessary to perform billing and collections on behalf of the City, that Xerox would comply with its contractual obligations. Xerox continued to make these and similar representations to the City throughout the parties' relationship.

76.     Xerox and its personnel knew or should have known that its representations and omissions were false or they were reckless with respect to their knowledge of the truth and were made as a positive assertion, and Xerox knew or should have known at the time of the 2002, 2007, and 2011 contract executions/renewals/amendments that Xerox did not intend to perform as required, given Xerox's contract-breaching behavior of manipulating collections rates, withholding data, and systematically failing to provide the services required under the EMS Contracts. Yet Xerox never disclosed its true intentions to the City, made the misrepresentations detailed above among others, and induced the City to execute contracts and pay Xerox millions of dollars in compensation.

77.     Xerox refused to provide or was otherwise incapable of providing the City with fully auditable billing, collection, and accounts receivable systems that Xerox was required to maintain and make available to the City. Xerox took advantage of the lack of transparency it created. Xerox improperly induced the City to pay Xerox millions of dollars in bonuses to which Xerox was not entitled, and Xerox did so by manipulating its purported net collection rate by

improperly writing off certain accounts and by excluding those accounts from the net collection rate calculation as uncollectible. Through this and other manipulation, Xerox falsely represented to the City that it had achieved a net collection rate that was higher than Xerox's actual collection rate and thus tricked the City into paying Xerox millions of dollars in fees to which Xerox was not entitled.

78.     As a proximate and direct result of Xerox's actions, Xerox obtained funds from the City by fraud and by taking undue advantage. The City seeks equitable return of all amounts by which Xerox was unjustly enriched and any and all other relief to which it may be entitled.

Count 9 – Request for Declaratory Relief

79.     The City incorporates the allegations above.

80.     An actual and substantial controversy exists between the City and Xerox regarding certain rights and obligations under the EMS Contract, including § III ¶ H and Exhibits A and B.

81.     Pursuant to TCPRC Chapter 37, the City seeks and is entitled to declarations that (a) Xerox breached the EMS Contract by failing to perform in accordance with the prevailing professional standards with the respect to the scope, quality, due diligence, and care of the services Xerox provided, as required by § III ¶ H of the EMS Contract, (b) Xerox breached the EMS Contract by failing to perform in accordance with the Scope of Services contained in Exhibit A of the EMS Contract, (c) Xerox breached the EMS Contract by improperly calculating the net collection rate and Xerox's fees as described in Exhibit B of the EMS Contract, and (d) Xerox is legally required to indemnify the City for all damages, costs, claims, fees, and harm sustained to date and in the future as a proximate result of Xerox's breaches of contract.

82.     In accordance with TCPRC § 37.009, the City seeks and is entitled to an equitable and just award of costs and attorney's fees.

## VII.

### Jury Demand

83.     The City requests a jury trial in this action.

## VIII.

### Relief Sought

84.     The City respectfully requests that this Court enter judgment in favor of the City and against Xerox:

a.  Awarding the City actual damages, exemplary damages, costs and attorney's fees, costs of court, all other costs and expenses as allowed by law, and pre- and post-judgment interest at the maximum legal rate,

b.  Declaring that (a) Xerox breached the EMS Contract by failing to perform in accordance with the professional standards prevailing in Harris County, Texas, with the respect to the scope, quality, due diligence, and care of the services Xerox provided, as required by § III ¶ H of the EMS Contract, (b) Xerox breached the EMS Contract by failing to perform in accordance with the Scope of Services contained in Exhibit A of the EMS Contract, (c) Xerox breached the EMS Contract by improperly calculating the net collection rate and Xerox's fees as described in Exhibit B of the EMS Contract, and (d) Xerox is legally required to indemnify the City for all damages, costs, claims, fees, and harm sustained to date and in the future as a proximate result of Xerox's breaches of contract.

c.  Awarding the City disgorgement of all monies, revenues, profits, and other things of value paid to, received by, or enjoyed by Xerox.

d. Awarding the City all other and further relief, equitable and legal, to which the City justly is entitled.

Dated: February 28, 2014

Respectfully submitted,

By: /s/ *Geoffrey Harrison*

Geoffrey L. Harrison
Attorney-in-charge
gharrison@susmangodfrey.com
State Bar No. 00785947
S.D. Admissions No. 16690
Alex Kaplan
akaplan@susmangodfrey.com
State Bar No. 24046185
S.D. Admissions No. 602421
J. Hoke Peacock III
tpeacock@susmangodfrey.com
State Bar No. 15673980
S.D. Admissions No. 13529
Matthew Behncke
mbehncke@susmangodfrey.com
State Bar No. 24069355
S.D. Admissions No. 1121174
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 651-9366
Fax: (713) 654-6666

*Attorneys for Plaintiff City of Houston*

Of Counsel:

David M. Feldman
State Bar No. 06886700
Lynette K. Fons
State Bar No. 13268100
Judith L. Ramsey
State Bar No. 16519550
Lisa A. Ketai
State Bar No. 11362400
CITY OF HOUSTON LEGAL DEPARTMENT
900 Bagby Street, Fourth Floor
Houston, Texas 77002
Telephone: (832) 393-6491
Fax: (832) 393-6259

<u>Certificate of Service</u>

I certify that on February 28, 2014, a true and correct copy of this document properly was served on counsel of record via electronic filing in accordance with the USDC, Southern District of Texas Procedures for Electronic Filing.

Michael W. Mengis
Bradley K. Jones
BAKER & HOSTETLER LLP
811 Main Street, Suite 1100
Houston, Texas 77002
*Counsel for Defendants*

/s/ *Geoffrey Harrison*
Geoffrey L. Harrison